IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MERRION, | : | CIVIL ACTION NO. **1:CV-13-1757** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CORIZON HEALTH, INC., | : | |
| *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.  BACKGROUND.

On June 26, 2013, Plaintiff, formerly an inmate confined at SCI-Mahanoy, Mahanoy,

Pennsylvania, filed through counsel, this instant civil rights action pursuant to 42 U.S.C. § 1983.

(Doc. 1).  He also filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 2). Plaintiff named

as Defendants Corizon Health, Inc., Prison Health Services, Inc. ("PHS")[1], PHS Correctional

Healthcare, Dr. Robert Maxa, Beverly O'Rourke, Rhonda Sherbine, Dr. Dennis Parlavecchio, Dr.

Renato Diaz, Dr. Gaye Gustitus, Dr. David Ahner, Dr. John Lisiak, Nelson Iannuzzi, and Richard

Andreuzzi.

In his original Complaint, Doc. 1, Plaintiff raised several claims arising from the medical care

he received while in custody of the DOC at SCI-Forest, where he was incarcerated from 2008

through May of 2011, and when he was an inmate at SCI-Mahanoy, where he was incarcerated

---

[1]Plaintiff indicated in both of his Complaints that, upon his information and belief,
Defendant Corizon Health, Inc., was formed in 2011 through a merger with Prison Health
Services, Inc., and PHS Correctional Healthcare.

from May 2011 through 2012.  (Doc. 1, p. 5-6).  Plaintiff alleged that in April of 2008, he began experiencing severe pain in his back/hip/groin area.  (Id.).  As a result of this pain, Plaintiff sought treatment with the medical treatment staff at SCI-Forest, and was given a renal ultrasound in April 2008 and an x-ray in May of 2008, neither of which was conclusive.  (Id. at p. 7).  Plaintiff stated that he repeatedly complained of pain, but his complaints were dismissed by the named medical staff defendants as "spasms," and as such he was treated only with over-the-counter pain medication, such as Motrin.  (Id. at p. 8).  Plaintiff remained on basic pain medication and topical analgesic cream as treatment for several years.  (Id.).  Over the next several years, Plaintiff averred that the pain came and went, becoming so severe at times that he was unable to walk.  (Id.).

In March of 2012, Plaintiff was transferred to Columbia County Correctional Facility.  (Id.).  As a result of his continuing complaints of pain, he was sent for an MRI in August of 2012 which revealed that he was suffering from a softball-size tumor around his psoas muscle and lower spine.  (Id. at p. 10).  Plaintiff averred, "treating Mr. Merrion with only Motrin, Flexeril, and a topical analgesic cream for four years while Mr. Merrion has back pain and radiculopathy symptoms are increasing and not resolving is conduct which the defendants knew or should have known from their training and experience presented a substantial risk of serious harm to Mr. Merrion."  (Id. at p. 10).

Plaintiff claimed that the alleged failure to properly treat his serious condition by Defendants constituted a violation of his Eighth Amendment right to medical care under § 1983, as well as negligence under Pennsylvania state law.  (Id. at p. 14-15).  As relief, Plaintiff requested  unspecified monetary damages, including punitive damages, along with reasonable costs and fees.  (Id. at p.

16).[2]

On August 1, 2013, we screened Plaintiff's original Complaint as required by the Prison Litigation Reform Act of 1995[3] (the "PLRA"), and issued a Report and Recommendation ("R&R"). (Doc. 19).   We recommended that:

**1)** Plaintiff's claim for denial of medical care against Defendants Maxa, O'Rourke, Sherbine, and Parlavecchio, which arose at SCI-Forest, be transferred to the District Court for the Western District of Pennsylvania, or, alternatively, that they be dismissed so that Plaintiff can file an action against these Defendants in the Western District of Pennsylvania.

**2)** Plaintiff's professional negligence claims against Defendants Prison Health Services, Corizon Health, and PHS Correctional be dismissed without prejudice.

**3)** Defendants Diaz, Gustitus, Ahner, Lisiak, Iannuzzi, and Andreuzzi be dismissed without prejudice to allow Plaintiff to file an Amended Complaint to properly state the personal involvement of each one of the stated Defendants.

On August 5, 2013, Plaintiff filed Certificates of Merits ("COM") under Pennsylvania Rule of Civil Procedure 1042.3(a) as to Defendants.  (Docs. 20-30).

On August 15, 2013, Plaintiff filed Objections to our R&R.  (Doc. 31).   Plaintiff's Objections

---

[2]As we previously noted, to the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory and punitive damages) against Defendants in their official capacities, these requests for relief should be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010);  *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

were briefed by the parties. On August 29, 2013, the Court issued an Order and adopted, in part, and rejected, in part, our R&R. (Doc. 34). The Court dismissed without prejudice Plaintiff's claims against Defendants Diaz, Gustitus, Ahner, Lisiak, Iannuzzi and Andreuzzi, and directed Plaintiff to file an Amended Complaint to properly state the personal involvement of each one of the stated Defendants. The Court rejected our recommendation that Plaintiff's claim for denial of medical care against Defendants Maxa, O'Rourke, Sherbine, and Parlavecchio, which arose at SCI-Forest, be transferred to the District Court for the Western District of Pennsylvania. However, the Court directed Plaintiff to amend his Complaint to state how Defendants Maxa, O'Rourke, Sherbine, and Parlavecchio were personally involved with his claim for denial of medical care arising at SCI Forest.

The Court rejected our recommendation that Plaintiff's professional negligence claims against Defendants Prison Health Services, Corizon Health, and PHS Correctional be dismissed without prejudice for failure to file COM's since Plaintiff filed COM's as to all Defendants subsequent to our R&R.

Finally, the Court adopted our recommendation that Plaintiff's claims against the medical company Defendants be dismissed without prejudice.

The Court directed Plaintiff to file his Amended Complaint within 20 days.

Plaintiff timely filed his Amended Complaint, through counsel, on September 16, 2013. (Doc. 35). As in his original pleading, Plaintiff basically avers in his Amended Complaint that Defendants violated his Eighth Amendment right to medical care and were negligent in failing to diagnose and treat him properly at both SCI-Forest and SCI-Mahanoy for his softball sized tumor invading the psoas muscle in his spine, which was later diagnosed as stage II diffuse large B-cell

lymphoma. Plaintiff again names as Defendants Corizon Health, Inc., Prison Health Services, Inc., PHS Correctional Healthcare, Dr. Robert Maxa, Beverly O'Rourke, Rhonda Sherbine, Dr. Dennis Parlavecchio, Dr. Renato Diaz, Dr. Gaye Gustitus, Dr. John Lisiak, Nelson Iannuzzi, and Richard Andreuzzi. Plaintiff did not re-name Dr. David Ahner as a Defendant in his amended pleading. (Doc. 35, pp. 1-5). As such, Dr. David Ahner was terminated as a Defendant in this case. Plaintiff attempted to state the personal involvement of each Defendant in his Amended Complaint. It appears that Plaintiff claims that Defendants caused a delay in his diagnosis of his lymphoma condition by failing to order an MRI and that they failed to properly treat him for his lymphoma condition.

On September 20, 2013, all Defendants jointly filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint. **(Doc. 36).** Defendants simultaneously filed their support brief with Exhibits, A&B. (Doc. 37). Defendants' Ex. A is a 1-page copy of an informational article from the Lymphoma Research Foundation. Defendants' Ex. B is a copy of a 2012 unpublished decision from a Tennessee District Court.

On September 26, 2013, we issued an Order and granted Plaintiff's Doc. 2 Motion to proceed *in forma pauperis*. (Doc. 38).

On September 27, 2013, Plaintiff filed a Motion to Strike Ex. A which was attached to Defendants' support brief, seemingly under Rule 12(f). **(Doc. 40).** Plaintiff contends that since his pleadings did not refer to the article from the Lymphoma Research Foundation and since the article is not part of the record, it should not be considered by the court in deciding Defendants' Rule 12(b)(6) Motion to Dismiss. Plaintiff's Doc. 40 Motion to strike was briefed by the parties. (Docs.

41 & 43).

Also, on September 27, 2013, Plaintiff filed his opposition brief to Defendants' Rule 12(b)(6) Motion to Dismiss. (Doc. 42). Defendants filed their reply brief in support of their Rule 12(b)(6) Motion to Dismiss on October 2, 2013. (Doc. 44).

Thus, both Defendants' Rule 12(b)(6) Motion to Dismiss and Plaintiff's Motion to Strike are ripe for disposition. We have been assigned this case for pre-trial matters.

## II. STANDARDS OF REVIEW.

### A. SECTION 1983 STANDARD

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Kaucher v. County of Bucks*, 455 F.3d at 423. Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

Plaintiff alleges in his Amended Complaint that the individual Defendants were all acting under color of state law.  (Doc. 35, ¶ 21).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).  A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

### B.      MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States

Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and

legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Also, the *Reisinger* Court stated:

> Where the parties submit exhibits with their filings, a court must determine what documents may be considered with a motion to dismiss. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure, the Third Circuit Court of Appeals had held that "a court can consider certain narrowly defined types of material without converting the motion to dismiss" to one for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir. 1999). **Specifically, a court can consider "a document integral to or explicitly relied upon in the complaint ... [and] an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."** ( *Id.* (internal citations and quotation omitted).) The Circuit Court explained the rationale for these exceptions: "the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." FN11 *Id.* (internal citations and quotations omitted).) Matters of public record, including government agency records and judicial records, may be considered. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 257 n. 5 (3d Cir.2006) (citation omitted); *Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).

*Id.*(emphasis added).

As stated, Defendants' Exhibit A attached to their support brief to their Motion to Dismiss Plaintiff's Amended Complaint is a copy of a one page excerpt from an article by the Lymphoma Research Foundation regarding treatment of diffuse large B-cell lymphoma. (Doc. 37-1). Plaintiff has moved to strike Defendants' Exhibit A as outside of the pleadings, as not a matter of public record and, as not part of the record in this case. (Doc. 40). Plaintiff did not attach any exhibit to his Amended Complaint and he argues that his claims are not based on any indisputably authentic documents, such as the article Defendants submitted, except for his DOC medical records which have not yet been produced. As such, Plaintiff contends that the court should not consider

9

Defendants' Exhibit A for present purposes. *See Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d at 1196.

Defendants argue that insofar as Plaintiff alleges that his lymphoma condition should have been diagnosed earlier if he was given an MRI, Plaintiff's pleadings do not state what lymphoma is and how it is staged. Defendants point out that Plaintiff alleges he was diagnosed with Stage II diffuse large B-cell lymphoma about five months after he was released from SCI-Mahanoy. Thus, Defendants contend that "[s]ince the timing of [Plaintiff's] diagnosis is directly part of [his] claims, how the disease was diagnosed and staged is obviously part of [his] claims." Defendants state that their Exhibit A "simply outlined what lymphoma is, how many stages there are and gave some background on the disease–the very disease that [Plaintiff] was diagnosed with and is the basis of his lawsuit." (Doc. 43, pp. 1-2). Defendants maintain that the court can take judicial notice of matters and orders of public record like their Exhibit A in deciding a Rule 12(b)(6) motion. *See DiNicola v. Dipaolo,* 945 F.Supp. 848, 854 n. 2 (W.D. Pa. 1996)("courts are entitled to take judicial notice of public records in considering a motion for dismissal ... .")(citations omitted).

We agree with Plaintiff that at this juncture of the case Defendants' Exhibit A relating to what lymphoma is and how it is staged and treated, is not appropriate for a motion to dismiss. The authenticity of Defendants' Exhibit A is not undisputed, it is not a matter of public record, and it is not referenced in Plaintiff's pleadings. If the Court allows Plaintiff's case to proceed, during discovery the parties will be able to further develop the record on the issues discussed in Defendants' Exhibit in the context of Plaintiff's relevant DOC medical records. Therefore, we will recommend that the Court grant Plaintiff's Doc. 40 Motion to Strike Defendants' Exhibit A, and we

will not consider Defendants' Exhibit A in this R&R.

**III.    DISCUSSION**.

Since Plaintiff's case is, in part,  a civil rights action, pursuant to 42 U.S.C. §1983, claiming  a violation of his constitutional rights, this Court has  subject matter jurisdiction over Plaintiff's action under 28 U.S.C. §1331 and §1343.   The Court can exercise supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. §1367.

As mentioned, Plaintiff basically alleges that Defendants violated his Eighth Amendment rights when he was an inmate at SCI-Forest and SCI-Mahanoy by delaying and denying proper testing and medical care which caused a delay in the diagnosis and treatment for his serious lymphoma condition.  (Count I of Amended Complaint). Plaintiff also raises a claim of professional negligence against Defendants under Pennsylvania law.  (Count II of Amended Complaint). Plaintiff filed his COM's as to Defendants.    Defendants have moved to dismiss Plaintiff's Amended Complaint.

Plaintiff was confined in SCI-Forest from 2008 through May 2011, and then he was transferred to SCI-Mahanoy where he was incarcerated until March 2012, when he was released from DOC custody to the Columbia County Correctional Facility ("CCCF").  Plaintiff avers that about five months after he was confined in CCCF, an MRI was performed which revealed that he had a softball sized tumor invading his psoas muscle into his spine.  Plaintiff states that the tumor was later diagnosed as Stage II diffuse large B-cell lymphoma and, that he received treatment, including chemotherapy, radiation and palliative care.  Plaintiff alleges that if Defendants performed timely proper medical testing during his confinement with the DOC in SCI-Forest and SCI-

Mahanoy, his lymphoma condition would have diagnosed sooner and his treatment would have commenced sooner.

As Defendants point out, Plaintiff's Amended Complaint indicates that "Prison Health Services, Inc., and PHS Healthcare are the same company and were taken over by Corizon Health, Inc." in 2011. Also, Defendants state that Plaintiff uses "PHS" to describe Prison Health Services, Inc., and PHS Healthcare. We too will use "PHS" to describe Defendants Prison Health Services, Inc., and PHS Healthcare. Further, Plaintiff alleges that the individual Defendants were either under contract with PHS and Corizon Health or employed by the DOC and were required to provide him with proper medical care. With respect to PHS and Corizon Health, we agree with Defendants that "[Plaintiff] generally avers that PHS [and Corizon Health] had a policy and/or custom of delaying medical care and providing the least amount of care in treating symptoms rather than diagnosing root causes of problems."

In their Motion to Dismiss, Defendants essentially argue that Plaintiff's Amended Complaint again lacks the required specificity as to how the acts, omissions and conduct of each Defendant gave rise to Plaintiff 's constitutional claim and his state law negligence claim. Defendants' first argument, however, is that Plaintiff's claims are time barred.

### 1.    Statute of Limitations

Plaintiff filed his Document 1 Complaint on June 26, 2013. (Doc. 1). Thus, we use this filing date for purposes of determining the start date of the two-year statute of limitations with respect to Plaintiff's constitutional claims. The applicable statute of limitations in a §1983 civil rights action in Pennsylvania is two years, as the statute of limitations for § 1983 claims is typically

governed by the statute of limitations that applies to personal injury tort claims in the state in which the claims arise. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (holding that "[t]he statute of limitations period for § 1983 claim arising in Pennsylvania is two years.").

We again acknowledge the existence of the so-called "discovery rule" exception to the statute of limitations in Pennsylvania. The Superior Court of Pennsylvania has explained, "[t]he discovery rule tolls the statute of limitations to reflect the 'plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence.'" *Barnes v. American Tobacco Co. Inc.*, 984 F. Supp. 842, 856 (E.D. Pa. 1997)(quoting *Kingston Coal Co. V. Felton Mining Co., Inc.*, 456 Pa. Super. 270, 690 A.2d 284, 288 (Super. 1997)). Further, the Supreme Court has stated that, "the cry for [the discovery] rule is loudest in latent disease and medical malpractice cases." *TRW Inc., v. Andrews*, 523 U.S. 19, 27 (2001).

Thus, as Defendants correctly state, there is a two-year statute of limitations with respect to a §1983 civil rights action in Pennsylvania. *See Chester v. Beard*, 657 F.Supp.2d 534, 539-540 (M.D. Pa. 2009)(citations omitted). The law is clear that §1983 claims in Pennsylvania are subject to a two-year statute of limitations. *See Metso Paper USA, Inc., v Bostik, Inc.*, 2011 WL 2670320, * 3 (M.D. Pa. 7-8-11); *Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6 affirmed 146 Fed.Appx. 558 (3d Cir. 2005). Federal law determines when a §1983 claim accrues, and "the applicable federal law provides that such a cause of action accrues when the Plaintiff knew or had reason to know of the injury that constitutes the basis of [the] action." *Rose v. Bartle*, 871 F.2d 331, 348 (3d Cir. 1989)(citations

omitted).  Further, under Pennsylvania's discovery rule, the statute of limitations begins to run when the Plaintiff has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury.  *Doe v. Kohn, Nast & Graf, P.C.*, 866 F. Supp. 190 (E.D. Pa. 1994).

Defendants state that in the present case, as readily apparent from Plaintiff's pleadings, his claims are limited to those arising after June 26, 2011.  Defendants state that while Plaintiff alleges he was not given treatment for his back pain since 2008 when he was confined at SCI-Forest, he waited until June 26, 2013, to file his original Complaint, "well more than two years after having back pain that in his mind went untreated."   Plaintiff was released from DOC custody in March 2012, and thus Defendants contend that Plaintiff's claims are limited to those occurring between June 26, 2011 and March 2012.   Defendants state that only a small amount of the alleged unconstitutional treatment Plaintiff incurred fell between June 26, 2011 and March 2012. (Doc. 37, pp. 6-7).

Plaintiff agrees with Defendants that the applicable statute of limitations with to his claims is two years. However, Plaintiff asserts a basis to toll the statute of limitations with respect to his pre-June  26, 2011 claims, namely the "continuing violation doctrine."  (Doc. 42, p. 14).  Plaintiff also argues that Defendants are not permitted to raise the affirmative defense of the statute of limitations in a Rule 12(b)(6) motion to dismiss.

Initially, we agree entirely with Defendants (Doc. 44) that since the statute of limitations issue is apparent on the face of Plaintiff's Complaints and the time alleged in Plaintiff's claims shows that his cause of action has not been brought within the statute of limitations, Defendants can properly assert this defense in their present Rule 12(b)(6) motion.  *See Robinson v. Johnson*, 313

F.3d 128, 135 (3d Cir. 2002). Also, "[a]s the party asserting the affirmative defense under federal law, Defendants have the burden of proving that the statute of limitations bars Plaintiff[] from brining this action." *Chester v. Beard*, 657 F.Supp.2d 534, 540 (M.D. Pa. 2009)(citation omitted).

Plaintiff then argues that the statute of limitations does not bar his claims. Plaintiff avers that he repeatedly complained for four years during his custody with the DOC, dating back to 2008, to the medical Defendants who worked for PHS that he had sudden and severe back pain, and that these Defendants did not give him proper diagnostic testing and proper treatment, and attributed his pain to "spasms." Plaintiff states that "[n]ot one Defendant ordered an MRI for [him]." (Doc. 42, p. 8). Plaintiff states that after he suffered for four years from severe pain, he discovered in August 2012, through an MRI ordered by CCCF that he had the stated softball sized tumor which was diagnosed as Stage II diffuse large B-cell lymphoma. Plaintiff contends that Defendants' conduct was part of a continuing practice of failing to give him an MRI dating back to 2008 when he began to experience his severe back pain during his confinement at SCI-Forest. Thus, Plaintiff states that his claims first accrued during 2008 at SCI-Forest and that they continued through his confinement at SCI-Mahanoy until March 2012.

Defendants reply that Plaintiff failed to identify any act in violation of his constitutional rights within the two-year statute of limitations period with respect to his pre-June 26, 2011 allegations. Defendants state that "[t]he various interactions between only some of the [Defendant] providers and [Plaintiff] within the statute of limitations cannot substantiate the continuing violations doctrine." Defendants further state that Plaintiff "seems to argue in his opposition [brief] that a[n] MRI should have been ordered at each of the appointments." Defendants state that Plaintiff's

15

pleadings do not assert such allegations, and that even if Plaintiff did make such allegations, his pre-June 26, 2011 claims fall outside of the statute of limitations on the face of his pleadings. (Doc. 44, p. 3).

We find that Plaintiff alleges in each of his appointments with the various medical staff Defendants from 2008 through May 2011 at SCI-Forest, and then until March 2012 at SCI-Mahanoy, as detailed in ¶'s 31 and 34 of his Amended Complaint, an MRI should have been ordered which would have revealed his tumor, and that these medical Defendants were deliberately indifferent to his serious medical needs by continuously failing to order him an MRI and by failing to adequately address his severe pain with proper medication. (*See* Doc. 35, ¶'s 27-32, ¶'s 34-35). Plaintiff also alleges that while he was being treated by Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest from 2008 to May 2011, he did not "receive an MRI, CT scan, any follow-up testing to the 2008 x-rays and sonogram to determine the origin of his symptoms, or any pain medication stronger than Ibuprofen and Flexeril, despite his constant complaints of pain" to said Defendants. (*Id.*, ¶ 33). Additionally, Plaintiff alleges that while he was being treated by Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi at SCI-Mahanoy from May 2011 to March 2012, he did not "receive an MRI, CT scan, any follow-up testing to the 2008 x-rays and sonogram to determine the origin of his symptoms, or any pain medication stronger than Ibuprofen and Flexeril, despite his constant complaints of pain" to said Defendants. (*Id.*, ¶ 36). Also, Plaintiff alleges that an MRI was required to determine the cause of his symptoms. (*Id.*, ¶ 37). Plaintiff avers that when he was transferred to SCI-Mahanoy, Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi initially removed him for all medication despite his continued

intense pain. (*Id.*, ¶ 41).

Plaintiff argues that his pre-June 26, 2011 claims against Defendants should be subject to an equitable tolling of the statute of limitations based on the continuing violation doctrine.

The "continuing violation doctrine" is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). In *Johnson v. Coleman*, 2012 WL 3686772, *3 (W.D. Pa. June 21, 2012), adopted by 2012 WL 3679572 (W.D. Pa. Aug. 24, 2012), affirmed by 506 Fed.Appx. 125 (3d Cir. Dec. 13, 2012), the Court stated that "the continuing violation doctrine must be considered to properly address tolling of the statute of limitations" in a §1983 civil rights case in which an inmate at SCI-Fayette claimed that his constitutional right to proper medical care was denied. The *Johnson* Court also stated that "[a]lthough the continuing violations doctrine has been applied most often to discrimination claims, it is applicable in other contexts, including procedural due process claims brought under §1983." *Id.* at *4 (citations omitted).

The Court in *Arneault v. O'Toole*, 864 F.Supp.2d 361, 391-392 (W.D. Pa. 2012), stated:

> Under the continuing violation doctrine, as applied by the Third Circuit Court of Appeals, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* (quoting *Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). The doctrine will apply only where the plaintiff can establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Id.* (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir.1995)).
>
> This inquiry involves consideration of three factors, *to wit:* (1) subject matter— *i.e.,* whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency— *i.e.,* whether the acts are recurring or more in the nature of isolated incidents; and (3) the degree of permanence— *i.e.,* whether the act had a degree of permanence such that it

should have triggered the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Cowell, supra,* at 292 (citing *West,* 45 F.3d at 755 n. 9). Of these, the third factor is the most important. *Id.* (citing *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983)).

The continuing violation doctrine recognizes that there may be situations where the illegality of a defendant's conduct becomes apparent only over a period of time and, in such cases, an otherwise diligent plaintiff should not be penalized for his or her delay in filing suit. *See Foster v. Morris,* 208 Fed.Appx. at 177–78 (recognizing the doctrine as "an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time.").

On the other hand, where the conduct consists of a discreet and actionable injury of which a reasonable plaintiff would have been aware, the doctrine has no application. *See Seawright v. Greenberg,* 233 Fed.Appx. 145, 149 (3d Cir.2007) (continuing violations theory does not apply in cases where the plaintiff is aware of the injury at the time it occurred) (citation omitted); *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 417 n. 6 (3d Cir.2003) (same) ( *citing Kichline v. Consolidated Rail Corp.,* 800 F.2d 356, 360 (3d Cir.1986)). Thus, "causes of action that can be brought individually expire with the applicable statute of limitations period." *O'Connor v. City of Newark,* 440 F.3d 125, 128 (3d Cir.2006). In short, "if prior events should have alerted a reasonable person to act at that time the continuing violation theory will not overcome the relevant statute of limitations." *King v. Township of East Lampeter,* 17 F.Supp.2d 394, 416 (E.D.Pa.1998), *aff'd,* 182 F.3d 903 (3d Cir.1999) (TABLE, NO. 98–1806). *See also MFS, Inc. v. Twp. of South Annville,* Civil Action No. 1:05–CV–1371, 2006 WL 3254535 at *4 (M.D.Pa. Nov. 9, 2006) (*quoting King*).

We agree with Defendants and find that the Court should dismiss as time barred all of Plaintiff's allegations regarding the events that occurred from 2008 through May 2011, during his confinement at SCI-Forest. We find that the Court should not dismiss as time barred Plaintiff's claims from May 2011, when he was transferred to SCI-Mahanoy, through March 2012, when he was released from SCI-Mahanoy to CCCF. We find that Plaintiff has sufficiently identified actions of medical Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi at SCI-Mahanoy which

constituted violations of his rights within the statutory period, *i.e.*, after June 26, 2011, and that the continuing violation doctrine applies in order to relate Plaintiff's pre-June 26, 2011 claims against the medical Defendants at SCI-Mahanoy. We do not find that Plaintiff has sufficiently identified actions of medical Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest from 2008 to May 2011, which constituted violations of his rights within the statutory period. Plaintiff attempts to relate his pre-June 26, 2011 claims as against Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest to his claims against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi at SCI-Mahanoy which he alleges constituted violations of his rights within the statutory period, *i.e.*, after June 26, 2011. However, since Plaintiff does not allege any violations of his rights against Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest which occurred within the statute of limitations period, we find that the continuing violation doctrine does not apply and that Plaintiff's claims against these Defendants are time barred. *See Johnson*, 2012 WL 3686772, *8. We also find that Plaintiff should have been aware of his Eighth Amendment claims against Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest that they were not properly treating his intense and continual back pain when they arose.

Thus, we find that Plaintiff's claims against medical Defendants Maxa, O'Rourke, Sherbine and Parlavecchio at SCI-Forest from 2008 to May 2011, are time barred and that the continuing violation doctrine does not apply to these Defendants. *See Johnson*, 2012 WL 3686772, *8. We will recommend that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be granted with respect to Defendants Maxa, O'Rourke, Sherbine and Parlavecchio. We will also recommend that Defendants Maxa, O'Rourke, Sherbine and Parlavecchio be dismissed with

prejudice since we find futility in allowing Plaintiff to amend his Amended Complaint with respect to these Defendants as his claims against them are time barred. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

We find that Defendants' Motion to Dismiss Plaintiff's pre-June 26, 2011 claims against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi at SCI-Mahanoy as time barred should be denied. Even though some of Plaintiff's claims against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi occurred over two years prior to the filing of Plaintiff's instant Complaint, *i.e.*, before June 26, 2011, we find that Plaintiff has alleged a situation where the illegality of the conduct of these Defendants became apparent only over a period of time when Plaintiff had an MRI in August 2012, during his confinement at CCCF. Based on our above detailed recitation of Plaintiff's averments in his Amended Complaint, we find that the Court should consider Plaintiff's allegations commencing in May 2011, when Plaintiff was transferred to SCI-Mahanoy until March 2012, when Plaintiff was released from SCI-Mahanoy. We find that the violations alleged by Plaintiff against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi constitute the same type of unlawful conduct, "tending to connect them in a continuing violation," that the alleged acts were recurring during Plaintiff's confinement at SCI-Mahanoy, and the alleged acts did not have a degree of permanence such that they should have triggered Plaintiff's awareness of and duty to assert his rights against these Defendants until August 2012, when the MRI revealed his tumor.

We find that Plaintiff's allegations against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi dating back to May 2011 involved conduct which did not consist of discreet and

actionable injuries of which a reasonable plaintiff would have been aware. As such, we find that the continuing violation doctrine should be applied to Plaintiff's allegations against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi pre-dating June 26, 2011, and we will recommend that these allegations not be dismissed as time barred.

### 2. Eighth Amendment Denial of Proper Medical Care Claim, Count I

Next, Defendants argue that Plaintiff's Amended Complaint fails to state an Eighth Amendment denial of proper medical care claim against them in Count I.   We cabin our discussion as to whether Plaintiff stated cognizable Eight Amendment claims to Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi at SCI-Mahanoy since we have found Plaintiff's claims against the medical Defendants at SCI-Forest are time barred.

Defendants state that Plaintiff's allegations against them are that their failure to order an MRI or CT scan was deliberately indifferent and led to a delayed diagnosis of his lymphoma condition. Defendants point out that Plaintiff avers that proper diagnostic testing was not performed on him due, in part, to cost considerations.  Defendants also contend that Plaintiff merely challenged their professional judgment as to how they should have properly treated him and that this does not amount to a constitutional violation.   Plaintiff's allegations regarding his Eighth Amendment claims against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi are largely found in ¶ 34 of his Amended Complaint.

The Third Circuit stated in *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010):

> To demonstrate an Eighth Amendment violation, [the inmate]  must show:
>
> "acts or omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs."  Estelle v. Gamble, 429 U.S.

97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We have interpreted this to mean that there are two prongs to the inquiry: (1) deliberate indifference on the part of prison officials; and (2) the prisoner's medical needs are serious. *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *accord Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999).

Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle,* 429 U.S. at 105, 97 S.Ct. 285. It is more than mere negligence or medical malpractice without some more culpable state of mind. *Id.* at 106, 97 S.Ct. 285; *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. For example, disagreement of professional opinion among doctors does not equal deliberate indifference. *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. Instead, it requires "obduracy and wantonness ... [,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (citations omitted).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The Court held:

A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97.  Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Id* at 107.  "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir.

1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

In light of our discussion above detailing the allegations of the Amended Complaint, we completely agree with Plaintiff (Doc. 42, pp. 22-24) and find that Plaintiff has sufficiently alleged the personal involvement of Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi regarding his Eighth Amendment claims, and that Plaintiff has sufficiently alleged the elements of these claims in relation to these Defendants.

Therefore, we will recommend that Defendants' Motion to Dismiss Count I of Plaintiff's Amended Complaint as against Defendants Diaz, Gustitus, Lisiak, Iannuzzi and Andreuzzi be denied.

### 3. State Law Professional Negligence Claim, Count II

Defendants argue that Plaintiff's Amended Complaint fails to give them notice as to Plaintiff's claim against them in Count II as required by Rule 8. Defendants maintain that Count II is too vague and, to the extent this Count appears to raise a state law claims of professional liability, it does not contain any subparagraphs outlining how each Defendant deviated from the standard of care.

Federal Rule of Civil Procedure 8(a)(2) requires that, in order to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 526, 127 S. Ct. 1955, 1959 (2007) (citing

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, "[a] party must state its claims . . . in numbered paragraphs, each limited to a single set of circumstances," and, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count. . ." Fed.R.Civ.P. 10(b).

We find that the substantive law of Pennsylvania applies with respect to Plaintiff's medical professional liability claims against Defendants. Under Pennsylvania law, "[a] prima facie negligence claim requires the Plaintiff to show that: (1) the Defendant had a duty to conform to a certain standard of conduct; (2) the Defendant breached that duty; (3) such breach caused the injury in question; and (4) the Plaintiff incurred actual loss or damages." *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757, *3 (M.D. Pa. 7-29-10)(quoting *Krentz v. Consol. Rail Corp*., 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2007)).

Also, because a professional negligence claim such as the one currently at issue requires expert testimony pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a), Plaintiff has now properly filed COM's as to each Defendant with respect to his Count II claim.

We agree with Plaintiff (Doc. 42, pp. 25-26) and find that Count II of his Amended Complaint is not in violation of Rule 8(a). As Plaintiff points out (*Id.*), we find that Count II gives each and every Defendant fair notice of what Plaintiff's claim against them is and the grounds upon which the claim rests. It sufficiently sets forth in brief, concise, and understandable terms the personal conduct of Defendants about which Plaintiff is complaining, and it pleads the elements of duty, breach, causation and damages.

24

As such, we will recommend that the Court deny Defendants' Motion to Dismiss Count II of Plaintiff 's Amended Complaint.

### 4. Claim for Punitive Damages

Defendants argue that Plaintiff's Amended Complaint fails to allege facts which justify his request for punitive damages.

Plaintiff seeks, in part, punitive damages against Defendants in his Amended Complaint. (Doc. 35, p. 22). We do not find that Plaintiff states in his Amended Complaint whether he is suing each individual Defendant in their personal and/or official individual capacities.[4] Plaintiff does aver in his Amended Complaint that each individual Defendant was "acting under color of state law." (Doc. 35, ¶ 21).

---

[4]We note that Plaintiff can only properly seek damages (i.e., compensatory and punitive) against the individual Defendants in their personal capacities. Plaintiff is precluded from recovering damages against the individual Defendants in their official capacities. Plaintiff can only seek damages against the individual Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, we will recommend that Plaintiff's damages claims against the state actor Defendants in their official capacities be dismissed with prejudice.

We also note that the Supreme Court has determined that, absent a statute to the contrary, punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981). However, this preclusion of a punitive damages remedy does not apply to the individual Defendants to the extent they are sued in their personal capacities. *Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual Defendants in certain §1983 cases. In our case, we find that Plaintiff cannot obtain punitive damages against the individual Defendants in their official capacities. Plaintiff can only seek punitive damages as against Defendants in their individual capacities.

As noted, we will recommend that the Court grant Defendants' Motion to Dismiss to the extent Plaintiff is requesting damages against the individual Defendants in their official capacities. Defendants now move to dismiss Plaintiff's punitive damages claim against them. Plaintiff argues that he have made proper a claim for punitive damages against Defendants. We only consider Plaintiff 's claim for punitive damages against the individual Defendants in their personal capacities.

As both parties recognize, punitive damages may be awarded against state officials in their individual capacities in a § 1983 case when Defendants have acted with "reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992)). Indeed, the law is well-stated that Plaintiff may sue the individual Defendants in their personal capacities for punitive damages with respect to his claims under §1983. *See Agresta v. Goode,* 797 F. Supp. 399, 410 (E.D. Pa. 1992).

The Third Circuit has also stated that:

> punitive damages in general represent a limited remedy, to be reserved for special circumstances. Despite its utility as a deterrent, the punitive damage remedy must be reserved, we think for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief.

*Keenan v. Philadephia*, 983 F.2d 459, 470 (3[d] Cir. 1992) (citing *Cochetti v. Desmond*, 572 F.2d 102, 105-106 (3d Cir. 1978)).

The *Cochetti* Court set out requirements for the defendant's conduct to justify punitive damages, namely, "that the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Cochetti*, 572 F.2d at 106.

As discussed in detail above, we agree with Plaintiff (Doc. 42, pp. 27-28) and find that at this stage of the case, prior to discovery, Plaintiff should be permitted to proceed with respect to his claim for punitive damages against the individual Defendants in their personal capacities.

### 5. *Monell* Claim against Defendants Corizon Health, Prison Health Services, and PHS Correctional Healthcare

Finally, Defendants argue that Plaintiff has failed to properly state a claim against Defendants Corizon Health, Prison Health Services, and PHS Correctional Healthcare under *Monell*. With regard to Defendants Prison Health Services, Inc., and PHS Correctional Healthcare, Plaintiff states in his Amended Complaint that they were either the same company or were affiliated companies. Plaintiff states that Defendant Corizon Health, Inc., was formed in 2011 through the merger of Prison Health Services, Inc., PHS Correctional Healthcare, and another company. Plaintiff avers that from 2008 through 2011, Prison Health Services, Inc., and PHS Correctional Healthcare had a contract with Pennsylvania to provide the health care for inmates under the custody of the PA DOC, and that from 2011 through 2012, Corizon Health, Inc., was responsible for these inmates.  (Doc. 35, ¶'s 7-10, 20).

Since we find that Plaintiff's claims from 2008 through May 2011, when he was confined at SCI-Forest are time barred, we will recommend that Defendants Prison Health Services, Inc., and PHS Correctional Healthcare be dismissed with prejudice.

We agree with Plaintiff (Doc. 42, pp. 28-32) and find that he has stated a proper constitutional claim against Defendant Corizon Health, Inc., during the time he was confined at SCI-Mahanoy, under *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56

27

L.Ed.2d 611 (1978). Because this Defendant was alleged to be contracted by the state to provide

medical care to inmates at SCI Mahanoy, the standards annunciated in *Monell* apply to it. *See*

*Malles v. Lehigh County*, 639 F.Supp.2d 566 (E.D. Pa. 2009). Defendant Corizon Health cannot be

held liable for the conduct of persons it supervises pursuant to *respondeat superior*. *Meyers v.*

*Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.).[5] Rather, Defendant Corizon Health "[is]

subject to liability [in a §1983 action] to the extent [it] maintain[ed] an unconstitutional custom or

policy that caused the alleged constitutional violation." *Id.* (citation omitted).

> In *Mangus*, the Court stated:

> With respect to such institutional defendants it is clear that a County
> cannot cannot be held liable for the unconstitutional acts of its employees
> on the theory of respondeat superior. *See Monell v. Department of Social*
> *Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead,
> [a plaintiff] must demonstrate that the violation of his rights was caused by
> either a policy or a custom of the [county]. *See Beck v. City of Pittsburgh,*
> 89 F.3d 966, 971 (3d Cir.1996). *Berg v. County of Allegheny,* 219 F.3d
> 261, 275 (3d Cir.2000).

2010 WL 521114, *3.

Thus, Defendant Corizon Health cannot be held liable, either for its conduct or for the

conduct of employees, such as the medical Defendants at SCI-Mahanoy, pursuant to *respondeat*

*superior*. *Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009). In

order for Plaintiff to successfully allege a constitutional claim under §1983 against Defendant

Corizon Health, he must raise a *Monell* claim alleging that the Corizon Health is a governmental

entity and thus a "person" under §1983 and, alleging that either a policy or lack of policy of

---

[5]*See also Mangus v. DCP*, 2010 WL 521114, *8-*6 ( M.D. Pa. 2010).

28

Corizon Health led to the violation of the Plaintiff's constitutional rights. *See Monell v. New York Dept. of Social Servs.*, *supra*; *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

In *Kokinda,* 557 F. Supp. 2d at 590-91, the Court stated:

Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009). As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:

> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690. To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002)(citing *Bd. of County Comm'rs of Bryan County v.Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). But, despite Defendants' arguments that Plaintiff has failed to allege any specific policies that authorized the actions officers Brenner and Ohl allegedly took, (Doc. 9, at 10; Doc. 11, at 6-8), there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. *Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999). This would be "unduly harsh" at this early juncture. *Id.*

Therefore, in order to properly state a §1983 claim against Defendant Corizon Health, Plaintiff must not only allege that it qualifies as a governmental entity and thus is a person under §1983 standards, but Plaintiff must also must allege that Corizon Health unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of his constitutional rights. We agree with Plaintiff that he alleges that

Defendant Corizon Health, through its policies and customs, failed to train its medical personnel correctly, and failed to ensure its personnel were trained "to ascertain the actual standard of care for non-resolving non-traumatic back pain includes an MRI." (Doc. 42, p. 31).

Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, such as in the instant case, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)(citation omitted); *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. Further, Plaintiff "must show causation." *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. "Liability exists only when 'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Id.*(citations omitted).

We find that Plaintiff avers that the failure of Defendant Corizon Health to train its medical staff, as he specifically details in his Amended Complaint, caused the alleged unconstitutional conduct by the SCI-Mahanoy medical Defendants. (*See* Doc. 35, ¶'s 62-68). Plaintiff argues that his alleged injuries were due, in part, to the failure of Defendant Corizon Health to properly train its medical personnel and that this constituted a "policy" under *Monell*, thus making Defendant Corizon Health liable for the constitutional claims he raises under §1983. Based on *Kokinda* and *Malles*, we find Plaintiff's allegations sufficiently state that Defendant Corizon Health caused the alleged constitutional violations by having customs, policies, practices and procedures, and that Plaintiff states how these policies gave rise to the violations of his constitutional rights.

In the instant Amended Complaint, we concur entirely with Plaintiff (Doc. 42, pp. 28-32) and find that he does allege such an unconstitutional custom and policy as against Defendant Corizon Health.

Thus, we will recommend that Defendants Prison Health Services and PHS Correctional Healthcare be dismissed with prejudice and, that Plaintiff be allowed to proceed as against Defendant Corizon Health, Inc.

**IV.     RECOMMENDATION**.

Based on the foregoing, it is respectfully recommended that:

**1)** The Court **GRANT** Plaintiff's **Doc. 40** Motion to Strike Defendants' Exhibit A **(Doc. 37-1)**.

**2)**  The Court **GRANT, IN PART, AND DENY, IN PART**, Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint **(Doc. 36).**

**3)** The Court **GRANT** Defendants' Motion to Dismiss Plaintiff's Amended Complaint with respect to  Defendants  Maxa, O'Rourke, Sherbine and Parlavecchio, and with respect to Defendants Prison Health Services, Inc., and PHS Correctional Healthcare.  We also recommend that Defendants  Maxa, O'Rourke, Sherbine and Parlavecchio as well as Defendants Prison Health Services, Inc., and PHS Correctional Healthcare be **DISMISSED WITH PREJUDICE.**

**4)** The Court **DENY** Defendants' Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint with respect to  Defendants Diaz, Gustitus, Lisiak, Iannuzzi, and Andreuzzi as well as Defendant Corizon Health, Inc.

**5)** The Court  **DISMISS WITH PREJUDICE** all of Plaintiff's damages claims against Defendants Diaz, Gustitus, Lisiak, Iannuzzi, and Andreuzzi  in their official capacities.

**6)** The Court **DENY** Defendants' Motion to Dismiss Plaintiff's claim for punitive damages in his Amended Complaint against Defendants Diaz, Gustitus, Lisiak, Iannuzzi, and Andreuzzi in their personal capacities.

**7)** The Court **REMAND** this case to the undersigned for further proceedings.[6]

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:   October 17, 2013**

---

[6]Upon remand, we will direct remaining Defendants to file their Answer to Plaintiff's Amended Complaint and, we will then schedule a Joint Case Management Conference to set case deadlines.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MERRION, | : | CIVIL ACTION NO. **1:CV-13-1757** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CORIZON HEALTH, INC., | : | |
| *et al.,* | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 17, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis of that record.  The

judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may

constitute a waiver of any appellate rights.




                                           **s/ Thomas M. Blewitt**
_____ **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**


**Dated: October 17, 2013**