UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES MERRION, Plaintiff

vs. : Civil Action No. 1:13-CV-1757

CORIZON HEALTH, INC., *et al.*, Defendants.

*M E M O R A N D U M*

## *I. Introduction*

Plaintiff James Merrion filed this Section 1983 action on June 26, 2013, and amended his complaint on September 16, 2013. Plaintiff claims that Defendants were medically negligent and deliberately indifferent to his serious medical needs while he was incarcerated at two Pennsylvania state correctional institutions. Specifically, Plaintiff alleges that he experienced severe back pain from 2008 through 2012, and that Defendants failed to provide proper medical treatment because they did not order an MRI to determine the cause of his pain. After his release from state custody in 2012, Plaintiff was diagnosed with a large spinal tumor and stage II diffuse large B cell lymphoma. Plaintiff asserts that Defendants' failure to order an MRI constitutes negligence and deliberate indifference to his serious medical needs because it led to his cancer going undetected for an unknown period of time.

Presently, we are considering Defendants' motion for partial summary judgment on the Eighth Amendment claim. (Doc. 82). According to Defendants, the undisputed facts demonstrate that Plaintiff received regular treatment for his back pain–albeit not the treatment Plaintiff believes he should have received–and therefore, his deliberate indifference claim must fail. Because we agree that the record does not support a finding of deliberate indifference on behalf of the individual medical defendants, we will grant the motion. However, we will exercise supplemental jurisdiction and retain the remaining state law negligence claim.

*II. Background*

Plaintiff was incarcerated at SCI Forest from 2008 through May 2011, and at SCI Mahanoy from May 2011 through March 2012. (Doc. 98, ¶¶ 159-60; Doc. 100, ¶¶ 159-60). Defendants are Dr. Robert Maxa, nurse practitioner Beverly O'Rourke, physician's assistant Rhonda Sherbine, Dr. Renato Diaz, Dr. Dennis Parlavecchio,[1] Dr. Gaye Gustitus, Dr. John Lisiak, and physician's assistant Richard Andreuzzi. (Doc. 86, ¶¶ 2-14; Doc. 98, ¶¶ 2-14). Also named as a defendant is Corizon Health, Inc., the medical providers' employer.[2] (Doc. 98, ¶ 166; Doc. 100, ¶ 166).

On April 10, 2008, Plaintiff complained to the nursing staff at SCI Forest that he was experiencing right hip and groin pain. (Doc. 86, ¶ 39; Doc. 98, ¶ 39). Dr.

1. Dr. Parlavecchio passed away unexpectedly on April 20, 2014.

2. Corizon Health, Inc. and "PHS" or "PHS Healthcare" are the same company. (Doc. 86, ¶ 18; Doc. 98, ¶ 18).

Maxa examined Plaintiff this same day, and ordered antibiotics and a urinalysis. (Doc. 86, ¶¶ 40-41; Doc. 98, ¶¶ 40-41). The following day, after additional complaints from Plaintiff, Dr. Maxa ordered a mild narcotic. (Doc. 86, ¶ 42; Doc. 98, ¶ 42). An ultrasound report dated April 15, 2008 indicated Plaintiff had a possible kidney stone. (Doc. 86, ¶ 43; Doc. 98, ¶ 43). On April 17, after continued complaints of pain, Dr. Maxa examined Plaintiff again and found tenderness in his right flank but no "guarding, rebound or rigidity." (Doc. 86, ¶ 45; Doc. 98, ¶ 45). He prescribed a muscle relaxant. (Doc. 86, ¶ 46; Doc. 98, ¶ 46). Dr. Maxa saw Plaintiff one more time on April 25, and noted tenderness in his right flank and a muscle spasm in his lower back. (Doc. 86, ¶¶ 47-48; Doc. 98, ¶¶ 47-48).

On May 2, 2008, Plaintiff was seen by physician's assistant ("P.A.") Sherbine for complaints of pain in his right flank and lower right abdomen. (Doc. 86, ¶ 51; Doc. 98, ¶ 51). Plaintiff reported that lying down and walking aggravated the pain, and that he could not sleep at night. (Id.) After a physical exam, P.A. Sherbine discontinued the non-steroidal anti-inflammatory medication that Plaintiff had been taking for toe pain, and ordered Motrin, Bentyl (an antispasmodic medication for bowel troubles), and a urinalysis–which was normal. (Doc. 86, ¶ 53; Doc. 98, ¶ 53). These orders were approved by Dr. Maxa. (Doc. 86, ¶ 54; Doc. 98, ¶ 54). P.A. Sherbine saw Plaintiff again on May 8; he reported that the muscle relaxant helped, but that he continued to experience hip and side pain. (Doc. 86, ¶ 56; Doc. 98, ¶ 56). Sherbine discontinued Motrin and ordered another muscle relaxant, a non-steroidal anti-

inflammatory medication, x-rays of Plaintiff's right hip and pelvis (which were normal), and ordered Plaintiff to discontinue work and activities until May 16, 2008. (Doc. 86, ¶¶ 57-59; Doc. 98, ¶¶ 57-59). The following day, Sherbine saw Plaintiff for a Hepatitis C treatment follow-up; she noted a decreased range of motion due to pain, as well as tenderness in his right back and abdomen. (Doc. 86, ¶ 63; Doc. 98, ¶ 63). She ordered a follow-up in one week, a prescription for Medrol (a steroidal anti-inflammatory), x-rays of his lumbosacral spine (which showed no abnormalities), and restricted his work and activities through May 23, 2008. (Doc. 86, ¶¶ 64-66; Doc. 98, ¶¶ 64-66). These orders were approved by Dr. Maxa. (Id.) When the Medrol prescription expired, Sherbine ordered a regimen of Prednisone, another steroidal anti-inflammatory. (Doc. 86, ¶ 67; Doc. 98, ¶ 67). Plaintiff was seen for a follow-up on May 21, during which he noted improvement in his back pain and abdominal pain, and good range of motion in his right hip. (Doc. 86, ¶¶ 69-70; Doc. 98, ¶¶ 69-70). A week later, Plaintiff was seen for another Hepatitis C follow-up; he reported improved right side pain but continued tenderness in his abdomen. (Doc. 86, ¶ 71; Doc. 98, ¶ 71). On June 10, Sherbine ordered a continuation of muscle relaxants and Motrin, which Dr. Maxa approved. (Doc. 86, ¶ 72; Doc. 98, ¶ 72). Plaintiff was seen again on June 27 for a Hepatitis follow-up, but did not complain about his back. (Doc. 86, ¶ 74; Doc. 98, ¶ 74).

From mid-July 2008, through November 2010, Plaintiff was seen by medical providers almost monthly–sometimes weekly–to treat various ailments including burns, Hepatitis follow-ups, and skin rashes. (Doc. 86, ¶¶ 76-99; Doc. 98, ¶¶ 76-99).

During this time, Plaintiff continued taking the muscle relaxant and Motrin.[3] (Doc. 86, ¶¶ 83, 93; Doc. 98, ¶¶ 83, 93). On November 19, 2010, Plaintiff's muscle relaxant was reduced to once a day, but ten days later it was returned to three times a day, at Plaintiff's request. (Doc. 86, ¶¶ 99, 101; Doc. 98, ¶¶ 99, 101).

On May 12, 2011, Plaintiff was transferred to SCI Mahanoy. (Doc. 86, ¶ 106; Doc. 98, ¶ 106). Dr. Diaz reviewed Plaintiff's chart and ordered that his medications from SCI Forest be continued. (Doc. 86, ¶ 108; Doc. 98, ¶ 108). On May 16, Plaintiff had a visit with P.A. Andreuzzi, who discontinued the muscle relaxant and renewed the Motrin prescription. (Doc. 86, ¶¶ 110-11; Doc. 98, ¶¶ 110-11). On August 19, 2011 and November 14, 2011, Plaintiff was seen again by Andreuzzi in response to his request to renew his Motrin prescription. (Doc. 86, ¶¶ 119, 124; Doc. 98, ¶¶ 119, 124). On the latter occasion, Plaintiff refused to sign a sign-in sheet, so no prescriptions were ordered for him. (Doc. 86, ¶¶ 125-28; Doc. 98, ¶¶ 125-28).

Several weeks later, on January 6, 2012, Plaintiff complained to Andreuzzi of low back pain and tightness that had persisted for several days. (Doc. 86, ¶ 130; Doc. 98, ¶ 130). He denied having numbness or tingling, loss of range of motion, or loss of strength/sensation. (Doc. 86, ¶ 131; Doc. 98, ¶ 131). Andreuzzi ordered Motrin for

---

3. The parties dispute the details of some of these interactions between Plaintiff and his medical providers. (See, e.g., Doc. 86, ¶ 86; Doc. 98, ¶ 86). Defendants claim that Plaintiff had no complaints about his back during these visits, while Plaintiff maintains that his pain was constant–even if it was not recorded in his medical records. Regardless, it is undisputed that Plaintiff received treatment for his back pain during this time in the form of muscle relaxants and Motrin.

fourteen days, a topical pain reliever, a tapered dosage of Prednisone, gave Plaintiff a muscle rub, and restricted his work and activities through January 10, 2012. (Doc. 86, ¶ 133; Doc. 98, ¶ 133). Dr. Gustitus co-signed these orders. (Doc. 86, ¶ 134; Doc. 98, ¶ 134).

On January 17, 2012, Dr. Gustitus saw Plaintiff for a sick call; he reported that he suffered from chronic midback pain for three years and it was currently exacerbated. (Doc. 86, ¶¶ 135-36; Doc. 98, ¶¶ 135-36). Dr. Gustitis conducted a physical exam but noted nothing abnormal. (Doc. 86, ¶ 138; Doc. 98, ¶ 138). She ordered a urinalysis, blood work, and Motrin, and told him to return if he had more trouble. (Doc. 86, ¶¶ 139-140; Doc. 98, ¶¶ 139-140).

On February 22, 2012, Plaintiff was seen by Andreuzzi for a regularly scheduled physical exam which yielded no abnormal findings.[4] (Doc. 86, ¶ 144; Doc. 98, ¶ 144). On March 12, 2012, Plaintiff was seen a final time by Dr. Gustitus in preparation for his transfer to county jail; she advised him to follow up with the providers in the county jail and with a family doctor after his release. (Doc. 86, ¶¶ 146, 148; Doc. 98, ¶¶ 146, 148). Plaintiff was then transferred to Columbia County Correctional Facility, where he remained until his release on August 7, 2012. (Doc. 98, ¶ 161; Doc. 100, ¶ 161). On

4. Plaintiff disputes this statement on the basis that an MRI performed in August 2012 revealed a large mass in Plaintiff's spine, and thus, Plaintiff contends, he must have had an abnormality at the time of this physical exam. However, the fact at issue is whether Defendant Andreuzzi detected any abnormalities during this exam, and Plaintiff points to no record evidence contradicting Defendants' statement of material facts.

August 12, following an MRI and a biopsy, Plaintiff learned that he had a large malignant spinal mass. (Doc. 98, ¶ 181; Doc. 100, ¶ 181).

*III. Discussion*

*A. Standard of Review*

We will examine the motion for summary judgment under the well-established standard. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d. Cir. 2008) ("Summary judgment is only appropriate if there are no genuine issues of material fact."). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion "if no reasonable juror could find for the non-movant." Id. If the moving party demonstrates that no genuine issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a genuine issue for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" Roth v. Norfalco, 651 F.3d 367, 373 (3d Cir. 2011) (citing Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

*B. Under the Law of the Case, the Discovery Rule Applies*

Defendants' first argument in support of their motion is that Plaintiff's claims against the providers at SCI Forest – Dr. Maxa, P.A. Sherbine, and C.R.N.P. O'Rourke – are barred by the two-year statute of limitations that applies to Section 1983 claims.

However, as Plaintiff correctly observes, we considered and ruled on this argument in our December 23, 2013 opinion on Defendants' Rule 12(b)(6) motion. (Doc. 49). In that opinion, we held that Plaintiff's delay in filing suit was excused by the discovery rule. The discovery rule "tolls the statute of limitations when an injury or its cause was not known or reasonably knowable 'despite the exercise of due diligence.'" Lokuta v. Sallemi, No. 13-0288, 2013 WL 5570227, at *15 (M.D. Pa. Oct. 9, 2013) (Caputo, J.) (quoting Mest v. Cabot Corp., 449 F.3d 502, 510, 516 (3d Cir. 2006)). Because we have already ruled on Defendants' timeliness argument, the law of the case governs this issue. Under the law of the case doctrine, "courts should 'be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as [(1)] where the initial decision was clearly erroneous and would make a manifest injustice[;]'" (2) where new evidence is available; or (3) there was an intervening change in the law. Peak v. Colvin, No. 12-1244, 2014 WL 888494, at *3 (M.D. Pa. Mar. 6, 2014) (Conner, J.) (quoting In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009)).

Defendants half-heartedly argue that we should revisit our prior ruling on timeliness because new evidence in the record demonstrates that Plaintiff failed to meet the standard of due diligence required by the discovery rule. Specifically, Defendants point out that Plaintiff did not submit grievances about the medical care he received, and that there were "gaps in time" when he did not complain about his back. (Doc. 101 at 9-10). These facts do not create "extraordinary circumstances" that merit reconsidering our

original ruling. Under the law of the case, the discovery rule excuses Plaintiff's delay in filing suit.

*C. The Prison Litigation Reform Act ("PLRA") Does Not Apply*

Defendants argue that they are entitled to summary judgment because Plaintiff is subject to the PLRA, and was required to exhaust his administrative remedies prior to filing suit. According to Plaintiff, because he was not incarcerated when he filed suit, the PLRA does not apply to him. Pursuant to the plain language of the statute, as well as controlling case law from the Third Circuit Court of Appeals, we must agree with Plaintiff.

The PLRA states that "[n]o action shall be brought with respect to prison conditions . . . by *a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). In Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002), the Third Circuit explicitly held that the PLRA does not apply to former prisoners who file suit after their release. Id. at 210. "Any other view would be inconsistent with the spirit of the PLRA, which was designed to deter frivolous litigations by *idle prisoners.*" Id. (emphasis added). The Third Circuit noted that every court of appeals to have considered this issue has arrived at the same conclusion. Id. at 210 n.10 (collecting cases). Defendants' contention that Plaintiff should be considered a prisoner because he was subject to electronic monitoring is unavailing. A "prisoner" is defined in the statute as "any person *incarcerated or detained in any facility* who is accused of, convicted of, sentenced for, or

adjudicated delinquent for, violations of criminal laws or the terms and conditions of parole . . . ." 42 U.S.C. § 1915(h) (emphasis added). Because Plaintiff was not "incarcerated or detained in any facility" when he filed suit, he is not bound by the PLRA's exhaustion requirement. See Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998) (finding PLRA not applicable to lawsuit filed by inmate after he was released on parole).

D. *Eighth Amendment Claims*

Defendants argue that the undisputed facts demonstrate they were not deliberately indifferent to Plaintiff's medical needs. To establish an Eighth Amendment deliberate indifference claim, the plaintiff must show that a prison official knew of and disregarded an excessive risk to the prisoner's health. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). This test is two-pronged. First, a plaintiff must show that the defendants were deliberately indifferent to his medical needs. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Deliberate indifference exists where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Id. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Second, a plaintiff must show that those medical needs are serious. Id. "A 'serious' medical need

may be fairly regarded as one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires." Id. "A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." Jones v. Fisher, No. 3:12-cv-2113, 2013 WL 5322786, *6 (M.D. Pa. Sept. 20, 2013) (Nealon, J.). Last, to succeed on an Eighth Amendment claim against the corporate defendant, Corizon Health ("Corizon"), Plaintiff must prove that Corizon employed a policy or custom that caused the constitutional violation. See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).

We conclude that Plaintiff fails to meet the standard for deliberate indifference. Although the parties dispute the minute details of Plaintiff's interactions with his medical providers, all agree that he received continual care for his back pain. Plaintiff was prescribed muscle relaxants, over-the-counter pain relievers, steroidal and non-steroidal anti-inflammatories, topical creams, and muscle rubs. Defendants performed physical examinations, ordered x-rays and blood work, but detected no abnormalities. Nothing in the record indicates that Defendants subjectively knew that Plaintiff's back pain was related to a more serious health condition–such as cancer–and refused to provide treatment or delayed treatment for a non-medical reason. Although Plaintiff contends that an MRI should have been ordered–and that Defendants' failure to do so

falls below the standard of care–negligence alone does not rise to the level of deliberate indifference. Estelle, 429 U.S. at 105; see also Rouse,182 F.3d at 197 ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"). A plaintiff must show the defendant acted with "obduracy and wantonness." Whitley v. Albers, 475 U.S. 312, 319 (1986). The record before us does not support such a finding. Accordingly, we will grant summary judgment in favor of all defendants[5] on the Eighth Amendment claim.

E. *Remaining State Law Negligence Claim*s

Having dismissed the federal claims, we must decide whether to exercise supplemental jurisdiction over the remaining state law negligence claims. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. See 28 U.S.C. § 1367(c). Notably, while the court *may* dismiss these claims, dismissal is not required. See Baker v. Farmers Elec. Co-op, Inc., 34 F.3d 274, 283 (5th Cir. 1994) ("This pendent jurisdiction may continue even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot."). "In making its determination, the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"

---

5. Because we find that the individual defendants did not violate Plaintiff's constitutional rights, there is no underlying constitutional violation to impute to the corporate defendant, and Corizon is entitled to judgment as a matter of law. See Johnston v. City of Pittsburgh, No. 12-1689, 2014 WL 2718818, at *9 (W.D. Pa. June 16, 2014) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting United Mines Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

This case has been before this court for nearly two years, and is close to completion. The remaining claims involve application of straightforward state law negligence principles. See Timm v. Mead Corp., 32 F.3d 273, 277 (7th Cir. 1994) (district court had discretion to retain supplemental claims where the applicable state law was straightforward, the litigation was over a year old, and discovery was completed). We conclude that there is "no need to delay the resolution of this matter . . . by having the parties litigate the unspectacular state law issues anew in state court." Id. The interests of justice and judicial economy favor completing the litigation in this court, where the claims can be adjudicated efficiently. Accordingly, we will exercise supplemental jurisdiction and retain the remaining claims.

*V. Conclusion*

For the foregoing reasons, we find that Defendants are entitled to summary judgment on the Eighth Amendment claim. We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge